UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT CARLSON,

        Plaintiff,

                              CASE NO. 1:05-CV-799

v.

                              HON. ROBERT J. JONKER

LEPRINO FOODS COMPANY,

        Defendant.
_____/

## OPINION

### INTRODUCTION

Plaintiff Vincent Carlson brings this action against his former employer, Defendant Leprino Foods Company (Leprino), alleging retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3) (2000), and seeking damages for lost wages. Defendant filed two motions for summary judgment. The first seeks summary judgment on Plaintiff's FLSA retaliation claim; the second seeks summary judgment on Plaintiff's claim for lost wages. The Court had a hearing on Defendant's motions and issued an Order granting Defendant's motion for summary judgment on Plaintiff's claim for lost wages. This Opinion addresses Defendant's motion for summary judgment on Plaintiff's FLSA retaliation claim.

**BACKGROUND**

Leprino manufactures cheese products 24 hours per day, 365 days per year. Leprino employed Plaintiff as an hourly employee at its Allendale, Michigan plant from 1996 until 2005. (John Housler's Aff. ¶ 3.)[1] Plaintiff worked first shift five days per week. (*Id.*) Plaintiff's two days off each week varied depending on production schedules, vacation, time-off requests, and discipline policies. (*Id.* ¶ 4.) Plaintiff's supervisor, Brian Morris, created the weekly work schedule for 15–20 first-shift employees, including Plaintiff. (Brian Morris's Aff. ¶ 3.)[2]

Plaintiff was viewed as a high performer and hard worker. (Pl.'s 2d Aff. ¶ 4.)[3] He had received excellent performance evaluations and was recognized as employee of the quarter for the last quarter of 2004. (*Id.*)

While still working for Leprino, Plaintiff began attending law school in January 2005. (Pl.'s Dep. 25–28.)[4] He attended class on the weekends and asked Leprino for Saturdays and Sundays off to accommodate his class schedule. (*Id.*) Leprino did not guarantee that Plaintiff would be able to have every weekend off, but it endeavored to do so, at least during Plaintiff's first term, and Plaintiff attended class without a conflict with his work schedule from January, 2005, through April, 2005. (Morris's Aff. ¶ 3.) In fact, in his

---

[1] John Housler's affidavit is Ex. A to Def.'s Br. (docket # 28).

[2] Brian Morris's Aff. is Ex. 6 B to Def.'s Br. (docket # 28).

[3] Pl.'s 2d Aff. is Ex. B to Pl.'s Br. (docket # 32).

[4] Pl.'s Dep. is Ex. A to Pl.'s Br. (docket # 32).

nine years with Leprino, up to the events triggering this dispute, Plaintiff was granted almost every day off that he requested. (Pl.'s 2d Aff. ¶ 5.)

Leprino's "no-fault" attendance policy requires that employees be assessed attendance points if they are tardy, absent, or leave early. (Housler's Aff. ¶ 5.) Discipline is triggered upon accrual of five attendance points. (Id. ¶ 7.) Kronos, Leprino's automated timekeeping and payroll system, automatically assigns attendance points and generates a weekly attendance report, which Leprino supervisors review. (Morris's Aff. ¶ 4.) The system assigns one attendance point to consecutive-day absences; Leprino policy instructs supervisors to alter that assignment and give one point for each day of a consecutive-day absence, unless the employee presents a doctor's note. (Id.) This policy was not consistently applied. (Id.)

Leprino required its employees, including Plaintiff during his employment, to wear a sanitary uniform. (Pl.'s Aff. ¶¶ 7–13.)[5] Leprino employees were not paid for the time it took them to change into and out of the uniform. (Id.) In March, 2005, Plaintiff complained to the U.S. Department of Labor (DOL) about Leprino's failure to pay employees for time spent changing into and out of their uniforms. (Pl.'s 2d Aff. ¶ 9.) In April, 2005, the DOL began investigating Leprino's policy of not compensating employees for time spent changing into and out of their uniforms. (Memorandum from John Housler to File (April 25, 2005).)[6]

---

[5] Pl.'s Aff. is Ex. D to Pl.'s Br. (docket # 32).

[6] Memorandum from John Housler to File (April 25, 2005) is Ex. E to Pl.'s Br. (docket # 32).

In May, 2005, less than one month after the DOL began investigating as a result of Plaintiff's complaints, Leprino began to issue attendance points to Plaintiff for absences that resulted when Defendant scheduled Plaintiff to work on weekends during which Plaintiff had law school class. Plaintiff was scheduled to work on Sunday, May 1, 2005, and Saturday, May 7, 2005. (Morris's Aff. ¶ 4.) He did not work either day; he did not submit a time-off request for either day. (*Id.*) Instead, Plaintiff called in sick on both days and attended his law school classes. (Pl's Dep. 94, 148–50.) Plaintiff also called in sick on Monday, May 2, 2005. (Morris's Aff. ¶ 4.) Plaintiff, who already had 4.5 attendance points, was assessed an attendance point for each day of absence. (*Id.* ¶ 5.) Although Kronos considered the consecutive-day absence to be one point, and although Morris admits that he was not consistent in assigning multiple points to consecutive-day absences, Plaintiff was assessed two points for his consecutive-day absence. (*Id.* ¶¶ 4–6)

On Monday, May 9, 2005, Brian Morris received the weekly Kronos report, assigned Plaintiff 2 points for his May 1–2 consecutive day absence, and verbally disciplined Plaintiff for accumulating 7.5 attendance points. (*Id.*) Plaintiff reviewed and signed the form indicating that he had received a verbal warning. (*Id.*) He asked for a copy of the notice but did not receive one. (Pl.'s Dep. 111.) Although Leprino claims that under its policy Plaintiff's accumulation of 7.5 attendance points triggered three levels of discipline (i.e., verbal warning, written warning, and three-day suspension),[7] Morris disciplined Plaintiff

---

[7] Leprino's policy requires that upon receipt of five attendance points an employee should be given a verbal warning; upon receipt of six points an employee should be given a written warning; and upon receipt of seven points an employee should be given a three-day suspension.

4

with only a verbal warning, and the disciplinary notice that Plaintiff signed indicated receipt of only a verbal warning. (Morris's Aff. ¶¶ 6–7.)

Leprino's People Development Manager John Housler later reviewed the discipline notice that Morris issued. (Housler's Aff. ¶ 10.) Upon review, Housler determined that Plainitff should have been given a written warning and a three-day suspension in addition to the verbal warning. (*Id.*) Housler sent the May 9 disciplinary paperwork back to Morris with instructions to issue additional discipline in accordance with the attendance policy. (*Id.*)

Morris then prepared three separate disciplinary notices to replace the May 9 notice. (Morris's Aff. ¶ 7.) Morris also suspended Plaintiff for three days, but he did not give Plaintiff a disciplinary notice alerting him to the suspension. (*Id.* ¶ 9; Pl.'s 2d Aff. ¶ 14.) In fact, Plaintiff never received any of the replacement notices that Morris prepared; he learned of them only after he was terminated. (*Id.*)

On May 9, 2005, Plaintiff requested May 15 and 21 off. (Morris's Aff. ¶ 9.) His requests were not granted because, according to Leprino, Plaintiff's presence at the plant on those days was necessary to accommodate the production schedule and other employee's time-off requests. (*Id.*) As a result, for the week of May 15, 2005, Plaintiff was scheduled to work only on the days he had requested off. (*Id.*) Despite having scheduled Plaintiff to work on May 21, and despite claiming that it was necessary for Plaintiff to be at work on May 21, Leprino managers were instructed not to allow Plaintiff to work if he reported on May 21. (Email from John Housler, Human Resources Manager, Leprino Foods, to Brian

5

Morris, Dave Morningstar, and Eric Walter (May 20, 2005).)[8] Plaintiff was absent on both May 15 and May 21 so that he could attend law school classes. (Pl.'s Dep 148–50.) Plaintiff's absence on May 21 resulted in the accumulation of his ninth attendance point. (Housler's Aff. ¶ 13.)

Once Plaintiff accumulated nine attendance points, Housler attempted to contact plaintiff to set up a meeting. (Housler's Aff. ¶ 14.) Plaintiff and Housler were unsuccessful in their attempts to get in touch with each other, so on May 26, 2005, Housler mailed a certified letter to Plaintiff asking him to contact Housler and stating that if he failed to contact Housler, Leprino would terminate him. (*Id.* ¶ 15.) Plaintiff never responded to the letter and on June 10, 2005, Plaintiff was terminated. (*Id.* ¶ 16.)

After he was terminated, Plaintiff requested a copy of his personnel file. (Pl.'s 2d Aff. ¶ 11.) Plaintiff's personnel file contained a 7.5 point write up, signed by Housler, indicating a verbal warning; a May 23 write up indicating receipt of 9 points and termination; and an altered version of the original May 9 disciplinary notice, edited by Housler to reflect the three different discipline levels, but devoid of any indication that Plaintiff ever received, reviewed, or was told of Housler's edits to the notice. (*Id.*)

Plaintiff later sought unemployment, and he requested his file from the unemployment agency. (*Id.* ¶¶ 13–14.) The contents of that file did not match the contents of his personnel file. (*Id.* ¶¶ 13–14.) The unemployment file contained three disciplinary

---

[8] Email from John Housler, Human Resources Manager, Leprino Foods, to Brian Morris, Dave Morningstar, and Eric Walter (May 20, 2005) is Ex. H to Pl.'s Br. (docket # 32).

notices prepared by Housler. (*Id.* ¶¶ 11–14.) One showed 5.5 points, one showed 6.5 points, and one showed 7.5 points. (*Id.* ¶ 14.) None was dated, signed by Housler or Plaintiff, or reviewed by Plaintiff. (*Id.*)

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

*Legal Framework*

The FLSA protects an employee from retaliation by an employer if the employee files a complaint with the DOL. 29 U.S.C. § 215(a)(3) (2000). Where there is no direct evidence of retaliation, courts employ a burden-shifting test to evaluate circumstantial evidence of retaliation. *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006), *cert denied*, 167 L. Ed. 319 (Mar. 19, 2007). The burden shifting test applies to this case.

7

Under the burden-shifting test a plaintiff bears the initial burden of producing evidence sufficient to support a four-element prima facie case. *Id.* (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999)). First, a plaintiff must have engaged in statutorily protected conduct. *Id.* Second, plaintiff's employer must know plaintiff engaged in the statutorily protected conduct. *Id.* Third, the plaintiff must suffer adverse employment action. *Id.* And fourth, the plaintiff's statutorily protected conduct must have caused the adverse employment action. *Id.* If plaintiff cannot produce evidence sufficient to support each element, the prima facie case fails, and Defendant is entitled to judgment as a matter of law.

If the plaintiff produces evidence sufficient to support each element of a prima facie case, two additional levels of analysis apply. The burden of production initially shifts to the employer to present a legitimate, non-retaliatory reason for the employment action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer cannot do so, the prima facie case stands unrebutted and plaintiff is entitled to judgment as a matter of law. But if the employer carries its burden, the burden shifts back to the plaintiff to produce evidence sufficient to support a finding that the employer's proffered reason is merely pretext for retaliation. *Id.* (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)). Unless the plaintiff carries this burden, the employer is entitled to judgment as a matter of law.

### *Plainitff's Prima Facie Case*

It is uncontested that Plaintiff engaged in protected conduct when he complained to the DOL, and it is uncontested that Leprino knew about Plaintiff's engaging in protected conduct. The first two elements of the prima facie case are thus established. Defendant challenges only the third and fourth elements. In particular, Defendant argues that denial of requests for time off is not, as a matter of law, adverse employment action; and that there is insufficient evidence to causally link the ultimate adverse action of termination to Plaintiff's protected conduct.

The Court finds that Plaintiff has plainly produced evidence sufficient to permit a finding of adverse employment action. This is not a case about the mere failure to grant requested days off. This is a case about termination of employment. It is certainly well established that "[m]ere inconvenience or an alteration of job responsibilities" is not, standing alone, an adverse employment action. *Id.* at 490. Similarly, denial of leave requests or specific days off, standing alone, do not amount to materially adverse employment actions. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). But Plaintiff is not simply arguing that Defendant's failure to grant days off was adverse employment action. He is arguing that Defendant refused to grant his requests for days off, which resulted in his accumulation of attendance points, which resulted in his termination, which is an adverse employment action. Defendant unquestionably terminated Plaintiff's employment, and termination satisfies the adverse-employment-action element of the prima facie case.

The pivotal issue on the prima facie case analysis is whether Plaintiff has produced evidence sufficient to permit a finding of cause. Plaintiff must produce evidence sufficient to raise the inference that his protected conduct was *the* likely reason for his termination. *Adair*, 452 F.3d at 490; *Griffin v. AutoZone, Inc.*, No. 4:01-CV-142, 2003 WL 1139873, at *8 (W.D. Mich. Feb. 7, 2003). Propinquity is a factor to consider, but it is not determinative without more. *Jackson v. Flint Ink North Am. Corp.*, 370 F.3d 791, 798 (8th Cir. 2004); *Griffin*, No. 4:01-CV-142, at *6. In this case, the Court finds that Plaintiff has carried his burden.

Plaintiff's termination occurred shortly after he engaged in protected conduct: he was terminated just one month after the DOL showed up onsite to investigate in response to Plaintiff's complaints. Before Plaintiff engaged in protected conduct, Defendant recognized Plaintiff as a hard worker who did his job well. Before the DOL began investigating as a result of Plaintiff's complaint, Plaintiff had been granted virtually every day-off request he ever made, and he had been attending law school without conflict for four months. Only after Plaintiff engaged in protected conduct and the DOL responded to his complaints with a site inspection did the chain of events leading to termination begin. Defendant knew that Plaintiff would be unable to work on weekends, as he had been for the first quarter of 2005; yet after Plaintiff had complained to the DOL, Defendant began scheduling Plaintiff to work weekends. In the course of one month Defendant's scheduling resulted in Plaintiff accumulating sufficient attendance points to warrant his termination.

10

Although perhaps not enough on its own, this evidence does support the conclusion that Plaintiff's complaint to the DOL resulted in his termination.

Additionally, the evidence in the light most favorable to Plaintiff also supports the conclusion that Defendant treated Plaintiff differently from other employees. Plaintiff was given two points for his consecutive-day absence, but at least one other employee was given only one point for similar absences. Moreover, Kronos, Leprino's automated timekeeping system, is programmed to consider consecutive-day absences as only one attendance point. In fact, Leprino manager Morris admits that he did not consistently give multiple points to employees who had consecutive-day absences. A reasonable fact finder could use this evidence to conclude that Leprino was applying its attendance policy differently to Plaintiff in an attempt to ensure Plaintiff's termination following his complaint to the DOL.

There is also evidence supporting the conclusion that Plaintiff was not actually needed on the days scheduled, and that others could have worked in his place. Other Leprino employees were available on the days that Plaintiff was scheduled to work. In fact, Leprino managers were instructed not to allow Plaintiff to work on May 21, despite the fact that Plaintiff was scheduled to work that day, and despite the fact that Plaintiff's presence was, according to Leprino, *necessary*. A reasonable juror could rely on these facts to infer that Plaintiff was not actually needed on the days he was scheduled to work, that he could have been scheduled to work on days that accommodated his class schedule, and that scheduling

11

him to work on the 21st was an intentional act to ensure the accumulation of his ninth attendance point.

Lastly, a juror could construe certain recordkeeping discrepancies and Leprino's failure to provide Plaintiff with discipline notices as evidence of retaliation. Plaintiff's discipline write ups were not timely given to him—he says that he never saw the corrected notices until after he was terminated. Moreover, the contents of Leprino's personnel file did not match the contents of the file provided to the unemployment agency. These facts could be used to support the conclusion that Defendant manipulated Plaintiff's file to justify and support its decision to terminate him.

When viewed in the light most favorable to Plaintiff, the evidence supports a finding that Plaintiff's accumulation of attendance points and his subsequent termination were in retaliation for Plaintiff's engaging in protected conduct.

### *Leprino's Non-Retaliatory Justification*

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to provide evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Adair*, 452 F.3d at 489. In the burden-shifting analysis, the employer's burden is relatively light. An employer need only articulate a reason; there is no obligation to prove or persuade the Court that the employer was actually motivated by that reason. *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 280 (6th Cir. 1991).

Defendant asserts that it terminated Plaintiff in accordance with its attendance policy because of Plaintiff's excessive absenteeism. It argues that the attendance policy

clearly requires two points be allocated for consecutive-day absences, at least those without a doctors excuse. It argues that it treated Plaintiff the same under the policy as it treated all other employees. In short, Defendant argues, it was Plaintiff's absenteeism, not his complaint to the DOL, that resulted in his termination. Furthermore, Defendant argues, the production schedule combined with other employee's requests for time off necessitated scheduling Plaintiff to work on the days he had requested off. Defendant's articulated reason has evidentiary support and satisfies its burden.

### *Pretext*

Once the employer articulates a legitimate, non-retaliatory reason for the employment action, the burden shifts back to the plaintiff to show that the legitimate reason had no basis in fact, that the legitimate reason was not a factor motivating the employer's decision, *or* that the legitimate reason was insufficient to justify the employer's decision. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996). The evidence viewed in the light most favorable to Plaintiff would support a finding that Defendant's articulated reason is merely pretextual. Thus, the ultimate factual question of whether Defendant retaliated against Plaintiff for his protected conduct is a material issue of fact and summary judgment is not appropriate.

In addition to the evidence supporting Plaintiff's prima facie case of causation — evidence that also supports pretext — there are record-keeping discrepancies that a reasonable fact finder could use to conclude that Defendant was concealing information from Plaintiff and papering Plaintiff's file to justify his termination. Plaintiff's violation notices

13

were not timely issued and may have been written up after his termination. Moreover, the contents of Leprino's personnel file do not match the contents of the file sent to the unemployment agency. These are troubling discrepancies that a reasonable juror could use to conclude that the attendance policy and discipline notices were used as paper justification for a decision to terminate Plaintiff based on his protected conduct.

Additionally, there is evidence that other employees could have worked in Plaintiff's place on May 15 and 21, despite Defendant's claims to the contrary. The clearest evidence of this is the email message directing Leprino managers to send Plaintiff home and not to let him work if he showed up for the shift on May 21. May 21 was the day on which Leprino assigned Plaintiff his ninth point under the attendance policy. A reasonable juror could conclude that Defendant was simply setting the Plaintiff up and not genuinely and fairly applying an attendance policy based on a bona fide work schedule.

The inconsistent application of the attendance policy also supports an inference of pretext. Kronos assigned only one point for consecutive-day absences and Morris admitted that employees were not consistently given multiple points for consecutive-day absences. Yet Plaintiff received two points for his consecutive-day absence. At least one other employee received more favorable treatment. A reasonable juror could conclude that Plaintiff was treated differently than other similarly situated employees because he had complained to the DOL.

## CONCLUSION

Altogether, and in the light most favorable to Plaintiff, the evidence would allow a reasonable juror to conclude that Leprino decided to retaliate against Plaintiff for his protected conduct by manipulating the attendance policy to justify a predetermined decision of termination.  This is not the only reasonable view of the facts, of course.  A jury may well accept Defendant's version of the facts.  But at this stage of the case, the only question is whether a reasonable jury could accept Plaintiff's view of the evidence.  For the reasons articulated here, the Court believes it could.  Accordingly, Defendant's motion for summary judgment is denied.


Dated:    November 8, 2007             /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE